## AMANDA E. WARE, Respondent, v. OSCAR DUNLAP et al., Appellants.

Kansas City Court of Appeals, November 20, 1911.

1. **LANDLORD AND TENANT: Agreement to Repair: Waiver: Rent: False Representations: Vis Major: Instructions.** Plaintiff rented a farm to defendant Dunlap, taking three notes signed by defendants, payable at different times. Plaintiff agreed in her lease to make certain repairs on the premises. Defendants paid the first two notes and when sued by plaintiff on the third filed an answer and counterclaim alleging that plaintiff had not made the repairs as agreed, and had falsely represented that a certain sixty-five acres was good farming land when in fact it was too wet to cultivate. Plaintiff in her reply denied the allegations of defendant's answer, and alleged a waiver by defendants of the provisions of the lease as to certain repairs. Under the pleadings and the evidence the trial court properly submitted the question of whether or not defendants had waived said provisions as to said repairs, and also whether the failure to get a crop from said sixty-five acres was due to the inherent defects in the land or to unusual rains, and a verdict for plaintiff was upheld.

2. ———: ———: ———. Where a landlord agrees to make certain needed repairs on the rented premises ordinarily no obligation is put upon the tenant to notify the landlord to make such repairs. But when the landlord makes repairs under such an agreement, and they are not complete or satisfactory to the tenant, the latter cannot sit idly by without making his dissatisfaction known to the landlord until the end of the term, and then deny liability for the rent because not all of the agreed repairs were made.

3. ———: False Representations: Warranty: Vis Major: Proximate Cause. · Under the evidence plaintiff's statement that a certain part of the land would produce a good crop was a representation and not a warranty. If the representation was false, and was relied on by the tenant, and the crop failure would have happened under ordinary conditions, the tenant would be entitled to damages. But if the crop failure was due to unusual rains the tenant would not be entitled to damages.

Appeal from Linn Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*A. W. Mullins* for appellant.

The circuit court tried the case on the theory that the plaintiff was not liable for her failure to fulfill her covenants contained in the lease to defendant Dunlap with respect to making repairs of the fences and other improvements on the farm, specified in the lease to be made by her, unless said defendant demanded of her that she make the same. This was manifest error. Wood's Landlord and Tenant, secs. 377, 378; Riley v. Pettis County, 96 Mo. 318; Schenk v. Forrester, 102 Mo. App. 124; Cook v. Soule, 56 N. Y. 420; 12 Am. and Eng. Ency. of Law, (1 Ed.) pp. 727, 748.

And with respect to defendant Dunlap's claim for damages, set up in the answer, for false and fraudulent representations as to the quality and adaptability of the 65 acres of bottom land on the farm to produce corn crops, made by plaintiff as alleged by defendants, for the purpose of inducing said defendant Dunlap to rent

said farm, the court tried said issue in the case on the theory that, notwithstanding any false and fraudulent representations plaintiff may have made to said defendant in that regard, the plaintiff was not liable therefor, provided said bottom land was overflowed by excessive rains and floods and rendered unfit for cultivation during the year 1909. In so holding and ruling the court was in error. Brown v. Mining Co., 231 Mo. 166; Caldwell v. Henry, 76 Mo. 254; Dulaney v. Rogers, 64 Mo. 201; Shinnabarger v. Shelton & Lane, 41 Mo. App. 147; Chase v. Rusk, 90 Mo. App. 25.

*E. B. Fields* for respondent.

BROADDUS, P. J.—This is a suit on a promissory note given for rent of a farm. The plaintiff leased to defendant Dunlap 160 acres of land in Livingston county, for the term of one year, commencing March 1, 1909, at a rental of three dollars per acre or $480 for the term. For payment of the rent the defendant Dunlap with defendant Cotter executed to plaintiff promissory notes as follows: One note for $100 to be paid February 25, 1909, one note for $100 to be paid December 1, 1909, and one for $280 to be paid January 1, 1910. All were dated February 16, 1909. On the same day plaintiff executed a written lease to defendant Dunlap. The lease provided that plaintiff should put the dwelling house on the premises in good repair; put a new roof on the hen house; put the outside fences in good repair, and repair the garden fence. Defendants paid the first two notes but refused to pay the one in suit. The defendants in their answer pleaded failure of consideration as to the note sued on, and for further defense and counterclaim, alleged that plaintiff neglected and failed to make the repairs specified in the lease she agreed to make in each and all of them to the damage of defendant Dunlap; that plaintiff did not give Dunlap possession of the leased premises until

April 15, 1909, to his damage; and that to induce
defendant Dunlap to contract with plaintiff for the
lease of said farm, she falsely and fraudulently repre-
sented to him that about sixty-five acres of said land
situated on Honey Creek bottom was good farming
land and would always produce good crops if properly
cultivated; that he relied on said representations as
true, but that as to said sixty-five acres said represen-
tations as to the quality and condition thereof were
wholly false and said part of said farm could not be
cultivated, because it was too wet and miry and that
by reason thereof the same was entirely valueless
to said Dunlap; and that he derived no benefit there-
from, to his injury and damage.

The plaintiff replied denying the allegations of the
answer and that Dunlap waived the provisions in the
lease as to covering the henhouse.   The defendants
introduced evidence tending to support all the allega-
tions of their answer.   Plaintiff introduced evidence
tending to support the allegations of her reply; and
that she repaired the house but made little or no re-
pairs on the fencing, but claimed that it was in good
repair.   She introduced evidence tending to show that
thirty-five acres of the bottom land never overflowed
and that she told defendant Dunlap that the other
overflowed during high water; that the land was very
wet at the time defendants were at the place; that the
outside fencing was as good as ordinary in the neigh-
borhood; and that Dunlap did not complain at any time
during the term of the lease about the condition of any
of the fencing or of the condition of any of the build-
ings.

The court gave all the instructions asked for by
defendants except the one numbered six which the
court modified.   It reads as follows: "If the jury
believe and find from the evidence that as an induce-
ment for said defendant Dunlap to enter into said
contract of lease with plaintiff she represented to him

that about sixty-five acres of the said land and farm situated on Honey Creek bottom was good farming land and would always produce good crops, if properly cultivated, and that in entering into said lease the defendant Dunlap relied on said representation as true and was thereby induced to and did enter into said contract of lease; and if the jury further believe from the evidence that said representation as to the quality and condition of said land was false, and that said defendant Dunlap could not plow or cultivate said sixty-five acres of land during the farming season of said term of lease, because said land was too wet and miry to permit him to do so, and that said land was unfit for cultivation, and that said defendant Dunlap derived no benefit whatever from said land, then the jury should find for the said defendant a reasonable amount for the damage sustained by him by reason of said sixty-five acres of land not being of the quality and kind as represented by plaintiff, not exceeding the sum of one hundred and ninety-five dollars." The modification consisted in striking out the words, "during the farming season of said lease," and the words, "said land was too wet and miry to permit him to do so," and by adding at the bottom, "unless you further find that said land was rendered unfit for cultivation by reason of excessive rains and floods during the year 1909." The court's theory as shown by the instructions given for plaintiff was; that defendant Dunlap could not recover for failure of plaintiff to make repairs unless he demanded during the term of the lease that she make such repairs; and that with respect to the bottom land as to plaintiff's representations as to its quality and productiveness of crops, if there were excessive rains and high water that year that flooded the bottom that would have destroyed any crop that might have been growing thereon, defendant Dunlap was not entitled to recover on that claim. The court also instructed the jury that if

Dunlap was dissatisfied with the state of repair in which plaintiff placed any of the fences or buildings mentioned in the lease that he could not sit idly by until after its expiration and then for the first time make known to plaintiff his dissatisfaction with the same, but that it devolved on him to demand of the plaintiff that she put the same in better repair during the term of the lease. Plaintiff recovered judgment in the sum of $180 from which defendants appealed. As the plaintiff undertook and did make certain repairs of the buildings and small repairs on the fencing which she claimed were in good condition, the court's theory as shown by its instruction to the jury was, defendant Dunlap should have made known his dissatisfaction during the term of the lease and demanded better repairs.

We are of the opinion that ordinarily notice to repair is not necessary where the landlord has actual knowledge that the repairs are needed. And this must be so where the contract provides for repairs for a condition existing at the time of making the contract which expressly requires certain repairs be made by the landlord. [Schenk v. Forrester, 102 Mo. App. 124; Riley v. Pettis County, 96 Mo. 318; Underhill on Landlord and Tenant, vol, 2, pp. 860–861.] Plaintiff undertook to put the buildings in good repair but made but little repairs on the fencing. We are of the opinion that notwithstanding under the terms of the lease providing for certain repairs of the buildings and that certain fences be repaired and that it was incumbent on plaintiff to make such repairs without notice or demand from defendant Dunlap, yet, if plaintiff did make certain repairs and they were not complete and to the satisfaction of defendant he should have so notified plaintiff during the term of the lease and have given her an opportunity to make such further repairs as were necessary to comply with the contract. The obligation of plaintiff was to put the buildings

and fences in good repair. The term "good repair" is not specific. There might have been a difference of opinion between plaintiff and defendant as to whether plaintiff had made good repairs, but if the defendant occupied the premises until the expiration of his lease without making any complaint, the presumption ought to obtain that he was satisfied with such as had been made, or in other words, that he acquiesced in those that had been made; but instead he remained silent, paid two of his notes, but finally refuses to pay the other for the reasons assigned in his answer.

The court was justified in modifying defendant's sixth instruction. The representation that the land would produce a good crop if properly cultivated was not in the nature of a warranty. If it was, however, a representation made for the purpose of inducing the defendant Dunlap to enter into the written lease and was *relied* upon by him, and that plaintiff knowing the representation to be untrue, the defendant would be entitled to recover. Therefore, if under ordinary conditions good and bad the land would not produce a good crop, the defendant made out his case. But if the condition of the land for the year covered by the lease was not its usual and ordinary condition, but one that was caused by unusual rains, it should not be said that the representations were false, for it is reasonable to assume that the parties did not contemplate that the land would produce a good crop if the rains were so unusual and excessive that no crop could be planted and cultivated during the cropping season. This was the view the court took of the question and modified the instruction accordingly. If the representations could be construed as a warranty the *vis major* or excessive and unusual rains would be no defense to defendant's claim for damages for a breach of such warranty, as in such cases a party must expressly excuse himself from such a visitation by having it inserted in his contract. But as we have said there

was no warranty, the representations did not apply to a season such as has been described.

Other objections made to the action of the court in the trial of the case we do not think of sufficient importance for comment. We believe defendant had a fair trial and that the judgment is for the right party. Affirmed. All concur.