POUTRA v. SAPP et al. (No. 6968.) *

(Court of Civil Appeals of Texas. Galveston. Dec. 10, 1915. Rehearing Denied Jan. 6, 1916.)

LANDLORD AND TENANT ⚖⇒48—REPRESENTATIONS—BREACH—MEASURE OF DAMAGES.

Defendant leased lands to plaintiffs, representing that they were adaptable to the cultivation of rice and free from obnoxious or poisonous grasses or seed. Plaintiffs prepared the lands for the cultivation of rice, expending large sums before they discovered that the lands were invested with obnoxious grasses and seed. The rice crop was greatly diminished, and plaintiffs sued to cancel their rent notes and for damages. *Held* that the measure of damages was the difference between the value of the rice crop which plaintiffs would have raised on the land had it been as represented, less the additional expenses necessary to obtain such value, and the value of the crop raised, instead of the difference between the rental value of the land if free from obnoxious grasses and its actual value.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 114–116; Dec. Dig. ⚖⇒48.]

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Action by E. E. Sapp and another against Joseph Poutra. From a judgment for plaintiffs, defendant appeals. Affirmed.

Dannenbaum & Taub and A. B. Wilson, all of Houston, for appellant. B. F. Louis, of Houston, for appellees.

McMEANS, J. E. E. Sapp and H. B. Sapp, plaintiffs, brought this suit against Joseph Poutra, defendant, for damages alleged to have resulted to them by reason of misrepresentations of fact by defendant concerning the condition of a farm rented to them by Poutra. They alleged in their petition, substantially, that on the 10th day of January, 1911, Poutra, claiming that he was the owner of a tract of land, represented that the land was good clean land adapted to the cultivation of rice, and that it was free from any and all poisonous or obnoxious grasses that would render it unsuited for cultivation in rice; that on said day they were shown the land by defendant, and that defendant then advised them that he would lease the land to them for the sum of $4 per acre; that, relying upon said representations of defendant, both as to the condition of the land and its adaptability to cultivation in rice, they executed a contract in writing with the defendant, by the terms of which plaintiffs obligated themselves to pay the defendant the sum of $4 per acre, it being provided therein that plaintiffs should execute their promissory note, dated January 14, 1911, for the sum of $2,400, payable to the order of the defendant, to bear 8 per cent. per annum interest after maturity, and stipulating that if a survey should disclose that there were less than 600 acres in the land so leased to plaintiffs, the defendant would indorse on the note a credit of the shortage at the rate of $4 per acre; that in accordance with their contract they executed said note to defendant, which by its terms matured December 1, 1911; that, relying upon said representations made by defendant, they entered upon and undertook to cultivate in rice the land shown to them by defendant, which land, upon a survey thereof, was found to contain 495 acres; that at the time of the execution of said contract, and at the time the land was shown to plaintiffs, they were wholly unacquainted with the character or condition of defendant's land, as to whether the same contained any poisonous or obnoxious grasses, or the seeds thereof, which would render the same unsuited or unfit for the cultivation thereof in rice, and that it was not possible at that time for plaintiffs to ascertain the adaptability of such land for the cultivation of rice, or whether there was present in the land any poisonous or obnoxious grasses, or the seed thereof, which would render the same unfit for the cultivation of rice. Plaintiffs further alleged that at the time defendant made said representations to them, and for a long time prior thereto, said land was poisoned with numerous obnoxious grasses, and that principally said land was filled with the seeds of an extremely poisonous grass, commonly known to rice farmers as "hoorah grass," which, plaintiffs allege, is "a grass which, when it comes, takes possession of the land, renders it wholly unfit for the cultivation of rice, in that said grass retards the growth of rice and causes it, in a large measure, to die and perish from the land, if not to do so entirely"; that this condition of the land was well known to defendant, and should have been known to him by the use of ordinary care.

Plaintiffs further alleged that the said representations so made by the defendant were false and fraudulent, and were made with a view of deceiving and defrauding the plaintiffs and to induce them to enter into the occupancy of said land, and to cultivate the same in rice, and to make the contract and execute the note, well knowing that if the plaintiffs were informed or knew that the land was poisoned with such grass, they would not undertake to cultivate it, or execute the contract, or note; and that plaintiffs having faith and confidence in the representation of defendant, and in reliance thereon, at his request executed the note and contract; that had plaintiffs known or been informed by defendant that "hoorah grass," or the seeds thereof, were upon the land, or had the defendant not made such representations as to the character and condition of the land, plaintiffs would not have entered into the contract of lease or executed said note; that, relying upon said representations, they undertook to cultivate rice upon the land, and that they did and had done all the necessary work and labor upon 495 acres thereof, and incurred all the necessary expense through the planting of said land in rice, when the "hoorah grass" made its appearance about March and April of the year of the lease; that plaintiffs, having at said time expended vast sums of money for work and labor in the cultivation of the rice, undertook and did everything known to rice farming to cultivate and grow a crop of rice upon the land, notwithstanding the presence of said grass, and to such end replowed about 270 acres thereof at further great cost and expense to them, and that they undertook throughout the growing season to raise a crop of rice upon the land, having already at the time the grass appeared expended vast sums of money and practically the necessary sum to grow and harvest a full crop.

Plaintiffs further alleged that they had contracted for water to irrigate the land, but that said grass had taken 270 acres thereof, and that it was useless to water said number of acres, in that the rice planted thereon had been crowded out by said grass, but that upon the remaining 225 acres the plaintiffs undertook to grow rice, notwithstanding said grass, and produced thereon about 1,400 sacks of the alleged value of $3 per sack; that in the cultivation of said land they incurred the reasonable and nec-

essary expense of $5,872, so that the plaintiff will sustain a loss, aside from the value of their own services in and about the crop, about the sum of $2,500, not including therein the payment of said note or any part thereof; that if the land had been free from poisonous grasses, as represented by defendant, under the conditions existing in and about said land during the growing and harvesting season, they could and would have raised and harvested upon the entire tract of land 12 sacks of rice per acre; that with the amount of money expended by them upon the land in an effort to cultivate it, together with such additional expenses as would have been necessary to cultivate and harvest a crop of 12 sacks per acre, the plaintiff, after payment of all expenses, including the rental agreed to be paid for the land, would have realized a profit upon the crop of not less than $7,500, that defendant was well acquainted with the expenses necessarily incurred in the cultivation of rice, and knew that plaintiffs, in reliance upon his representations, would incur such expense, and, knowing that the land was poisoned with said grass, knew that they would not be enabled to raise and harvest sufficient rice on the land to amount to or pay the expenses of doing so.

Plaintiffs prayed for judgment canceling the note and contract, and for a recovery of $7,500 profit, as alleged they would have made had the representations of defendant been true, or, in case they were not entitled to that relief, that they recover their losses occasioned by the defendant's misrepresentations, in addition to the cancellation of the note and contract, in the sum of $2,500, and for general relief.

The defendant Poutra answered, denying the making of the representations alleged by plaintiffs, and by cross-action sought to recover of plaintiffs the amount due upon said note.

The case was tried before a jury, to whom were submitted special issues in the form of interrogatories; and upon the return of their answers, all of which were favorable to plaintiffs, a judgment was entered thereon in plaintiff's favor and against the defendant, canceling the note given for the rental of the farm, and awarding plaintiffs a judgment for the sum of $2,658. From this judgment the defendant has appealed.

The main question presented for our consideration upon this appeal is as to the proper measure of damages applicable under the pleadings and proof. The trial judge decided the case upon the theory that the proper measure of damages was the difference between the value of the rice crop which plaintiffs would have raised upon the land had it been as represented by defendant, less the additional expenses necessary to have grown, harvested, and marketed the same, and the crop that was raised.

Under appropriate assignments of error appellant Poutra presents the following proposition:

"This is a suit for the recovery of damages alleged to have been sustained by reason of fraudulent representations inducing plaintiffs to enter into a contract of rental of a farm to their loss. In such case, the measure of plaintiff's damage is the difference between the reasonable rental value of the land as it actually was at the time the contract of lease was entered into and what was agreed to be paid by plaintiffs as rental under said lease."

To this proposition the appellees advance the counter proposition that the proper measure of damage under the pleadings and evidence is the value of the rice crop which plaintiff would have raised upon the land had it been good clean rice land, as represented, less the additional expenses necessary to have obtained such value, and that this alone represents, and compensates for, the loss sustained by plaintiffs by reason of the defendant's misrepresentations. These two propositions fairly present the contentions of the parties as urged in the trial court and in this court.

Without setting out any of the evidence introduced by plaintiffs, we may say that the testimony offered by them was sufficient to warrant the jury in finding that every material allegation in their petition was true, with the exception that the evidence warranted the jury in finding, as they did, that plaintiffs would have raised 10 sacks of rice per acre, if the land had been as represented by defendant, instead of 12 as alleged in the petition. Appellant in support of his contention cites and strongly relies upon the case of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 123, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and quite a number of other cases based upon it. George v. Hesse arose upon certified questions, the certificate reciting the following facts:

"A trade or exchange of property was consummated, by which George conveyed to Hesse an undivided two-thirds of certain land in Dimmit county and two-thirds of some personal property thereon, and Hesse conveyed to George a house and lot in San Antonio. The deed to Hesse was in consideration of $2,000 and the assumption by Hesse of two-thirds of an indebtedness of $2,000 and interest, and certain other minor assumptions. George assumed an incumbrance on the house and lot of about $1,300. What the Dimmit county land or the personal property was valued at in the trade does not appear. The action was brought by Hesse for damages for deceit in this: That George represented to him and caused him to believe, and act in consummating the trade, upon the fact that the Dimmit county land had a gusher of water upon it, which representation was material and proved to be false. The evidence sustained these allegations. There was evidence that this land without a gusher was worth $5.33 an acre and with a gusher would have been worth $20 an acre. The court charged the jury as follows: 'If you find for the plaintiff, then your verdict should be for the difference in value, if any, that you find from the evidence to be between the reasonable market value of the Dimmit county land on November 25, 1903, without a gusher of water, that is, a strong, flowing well of water on same, and the reason-

able market value of said land on said date, with a gusher of water, that is, a strong, flowing well of water on same, of the kind that you find from the evidence was represented by George if you find he made such representation.' And the jury found a verdict in accordance with such measure of damages."

In answering the question: "Did the charge give the correct rule for the measure of damages?" our Supreme Court says:

"We are of the opinion that the question should be answered in the negative. There is a conflict of authority upon the point; but it seems to us that the difference of opinion grows out of a confusion as to the nature of the cause of the action. This is not a case in which the plaintiff sued for breach of a contract; for the contract has been performed by both parties. But it is a case in which the plaintiff sues to recover damages for a fraudulent representation by which he has been induced to enter into a contract to his loss. Clearly we think the extent of his loss is the difference between the value of that which he has parted with and the value of that which he has received under the agreement. The contract in this case was not to convey a tract of land with a 'gusher' on it, but was to convey a certain tract of land, which was falsely represented to have a 'gusher' on it, which false representation was an inducement which led to the contract. Logically, therefore, what he has lost by the transaction is the measure of his damages. Let us suppose that when the fraud was discovered George had not conveyed any of the property transferred to him, and Hesse had sued for a rescission as he would have had the right to do; the parties would simply have been placed in statu quo, and the plaintiff would have recovered nothing for his failure to get the property as represented. He would have recovered his property, and there would have been no loss, except the expense of the litigation. So in this case, if the plaintiff recovers a sufficient sum in money to make that which he has received equal to that which he has conveyed and that which he has assumed to pay, he is compensated for his loss, and, as we think, that is the measure of his damages."

Another case, also strongly relied upon by appellant, and which is based upon George v. Hesse, is that of Weeks v. Stevens, 155 S. W. 667, decided by the El Paso Court of Civil Appeals. In that case the plaintiff alleged that he was induced to enter into a written contract of lease with defendant of certain land in Mexico, and that the defendant fraudulently represented to him that the land leased had full and legal rights of water for irrigation and ditches, and that said representation was material, and a part of the consideration inducing plaintiff to enter into the contract. He further pleaded that during the years 1908, 1909, and 1910 it became evident that sufficient water to raise a crop could not be had from the irrigation ditch, and that said land did not have full and legal water rights for irrigation from said ditch, whereupon plaintiff informed the defendant that he would abandon the written contract unless defendant would furnish sufficient water for irrigation, whereupon defendant agreed that if there should be a shortage of water in the ditch, he would dig wells and thereby provide water sufficient for raising the crops, and thereby induced plaintiff to plant crops each of said years, but defendant failed to comply with this agreement, and plaintiff suffered damage thereby. The court held that the first cause of action set up in the petition was ruled by the case of George v. Hesse, but that the second cause of action, based upon the breach of a verbal contract to furnish water sufficient to mature the crops for the three years, was governed by the rule laid down in Raywood Rice Canal & Milling Company v. Langford Bros., 32 Tex. Civ. App. 401, 74 S. W. 926, in which the measure of damages was stated to be—

"the difference between the amount actually realized from the crop and the amount that would have been realized had sufficient water been furnished."

We are of the opinion that neither of the two cases referred to, nor the other cases cited by appellant which are based on George v. Hesse, are applicable to the facts of the present case. It is a fundamental and cardinal principle of the law of damages that the injured party shall have compensation for the injury sustained. The injured party is entitled to recover a full indemnity for his loss, and to be placed as near as may be in the condition which he would have occupied had he not suffered the injury complained of. This rule was correctly applied in George v. Hesse; for, while the plaintiff in that case was induced to enter into the contract of sale by the fraudulent representations of the defendant, he did not thereafter incur loss and expense in ignorance of the untruth of the representations; therefore the Supreme Court correctly stated that it was clear that:

"The extent of his loss is the difference between the value of that which he has parted with and the value of that which he has received under the agreement."

In Weeks v. Stevens it is clear from the allegations of the plaintiff's petition that the plaintiff incurred the losses for which he sought compensation after he had full knowledge of the false representations made by defendant as to the existence of water rights and irrigation ditches, and that he proceeded to cultivate the land and incur the loss, not under the belief that the representations of defendant in that regard were true, but upon a verbal contract by which the defendant agreed to furnish sufficient water to irrigate and mature his crops. The rule laid down in George v. Hesse is unquestionably correct as applied to the facts of that case, and under it the plaintiff could have been fully compensated for the loss he sustained, and it accords with the fundamental principle that the injured party should have compensation for the injury sustained—should be entitled to recover full indemnity for his loss. No measure of damages which does not afford just compensation for the loss sustained can stand the fundamental test. Upon this principle the measure of damages in every case must be based, or it neither accords with principle nor authority. Bearing this principle in mind, would the rule for the measure

of damages applied in George v. Hesse, and contended for by appellant, be the correct rule to apply to the facts of this case? We think not. If so, then the measure of plaintiffs' damages would be the difference between the $4 per acre which they agreed to pay as rents and the actual rental value of the land. It must be remembered that defendant represented his land to be good clean land, free from poisonous grasses and the seeds thereof, when in fact it was infested with the seeds of a very obnoxious grass; that this fact was unknown to plaintiffs when they undertook to cultivate the land in rice and did not become known to them, and could not have been ascertained by them until March and April of the year of the lease, when the grass began to grow, at which time plaintiffs, relying upon the truth of the representations of defendant, had spent large sums of money in preparing the land for cultivation and planting, and in fact had expended nearly the entire sum necessary for the cultivation, harvesting, and marketing of the crop. The contract had then become executed and there could therefore have been no rescission. The measure of damages applied in George v. Hesse would have been wholly inadequate to afford plaintiffs full compensation for the losses thus sustained by them, without fault upon their part, but attributable directly to the wrong of the defendant. It seems to us that under the facts of this case the rule for the admeasurement of damages laid down in Jones v. George, 61 Tex. 346, 48 Am. Rep. 280, must control. The facts of that case briefly are these: Jones had a cotton crop which became infested with worms which would, in a short time, have destroyed the plants unless the worms were destroyed. He applied to George, a druggist, for the purchase of a quantity of paris green, by the application of which to the cotton plants the worms would be killed, stating to George the purpose for which he desired the drug. George sold him a quantity of a drug which resembled paris green, but which in fact was "chrome green," harmless and wholly unsuited to the purpose of poisoning the worms. This drug was applied to the cotton by Jones, under the belief that it was paris green, with the result that it had no effect upon the worms, and resulted in the loss to Jones of a large amount of cotton that he would have made had the drug been as represented. It was held that the druggist's liability was as broad under a breach of contract as he had expressly warranted the substance which he delivered to be paris green, and that the breach of the contract, if it resulted in the loss of the cotton crop, must be deemed the proximate cause of the loss, and that the measure of damages would be the value of the crop as it stood just before it was destroyed by the worms, with the cost of the drug used, and the further cost of its preparation and application to the cotton, with interest on the money thus expended added.

In Raywood v. Landford, 74 S. W. 928, this court laid down the rule that where, by a failure to supply water as contracted, the plaintiff's crop was injured, the true measure of damages is the difference between the value of the crop raised and the crop that would have been raised but for the defendant's default, less the cost of doing everything necessary to market it, and that this was but another way of saying that the proper measure was "to allow plaintiff the value of the crop at the time of the breach."

No reasonable distinction can be drawn between cases allowing recovery of a crop upon a misrepresentation in a sale of seeds and the instant case, where the land, just as essential for the growth of a crop, was misrepresented. In Jones v. George the court refers to this line of cases, and with reference thereto says:

"It has been held in many cases, where seeds of a given family were sold and represented to be seed of a given genus of that family, which would, in their natural development, produce crops of greater value than would other seeds of the same family, but of different genus, that the purchaser was entitled to recover, as damages, not simply the difference between the value of the seeds delivered and those for which the parties contracted, but the difference between the value of the crop raised with [reference to] the seeds delivered and the value of the same quantity of crop of the more valuable genus."

Among the cases cited in Jones v. George is that of Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753, where cabbage seeds were sold with the warranty that they would produce Bristol cabbages. The jury found they were not Bristol cabbage seeds and did not produce Bristol cabbages, and the court held that the damages would be the value of the crop of Bristol cabbages, such as the jury should believe would ordinarily have been produced that year, less the expense of raising, and the value of the crop that was raised. The court says:

"His engagement was, that the seed he sold was Bristol cabbage seed, and would produce Bristol cabbages. It may therefore have been reasonably supposed to have been in the contemplation of the parties that if the seed was not Bristol cabbage seed, and would not consequently produce Bristol cabbages, that damage would necessarily accrue to the plaintiff, and would be a natural consequence of such breach."

In the instant case, the engagement of defendant was that the land was good clean rice land, suited for the cultivation of rice, and free of poisonous grasses, and the evidence shows that he knew what it took to cultivate rice, and it necessarily follows, we think, that it must have been supposed that if the land was not as represented, plaintiffs would be damaged; and the damages recoverable in such case were such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as the probable result of the breach of it.

We shall not prolong this opinion by a further discussion of the cases akin to this which bear upon the measure of damages, but shall content ourselves by referring to the following authorities, which more or less directly sustain the view here expressed: Van Wyck v. Allen, 69 N. Y. 61, 25 Am. Rep. 136; Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696, 30 L. Ed. 810; Tyler v. Moody, 111 Ky. 491, 63 S. W. 433, 54 L. R. A. 417, 98 Am. St. Rep. 406; Ware v. Dunlap, 159 Mo. App. 388, 141 S. W. 21; 4 Sutherland on Damages (3d Ed.) 3400; Handy v. Roberts, 165 S. W. 37.

It follows from what we have said that it is our opinion the court applied the proper rule for the measure of damages under the facts of this case; and the assignment is therefore overruled.

What we have said sufficiently disposes of appellant's second assignment of error which complains of the refusal of the court to peremptorily instruct a verdict in his favor, the contention being that no evidence had been adduced showing plaintiffs' proper measure of damages.

We think the plaintiff E. E. Sapp showed himself to be sufficiently acquainted with the market value of the rice to testify as to such value, and the third assignment, predicated upon the refusal of the court to sustain an objection to his testimony as to value, is overruled.

We find no reversible error in the record, and the judgment must therefore be affirmed.

Affirmed.