## THE TEXAS & PACIFIC RAILWAY CO. v. LIGE BAYLISS.

### (Case No. 1750.)

1. MEASURE OF DAMAGES — GROWING CROP. — Where a crop has been wrongfully destroyed, the proper measure of damages is the value of the crop at the time of its destruction. Sabine & E. T. R'y Co. v. Joachimi, 58 Tex., 456; Tex. & St. L. R. R. Co. v. Young, 60 Tex., 201.

2. PLEADING — ALLEGATIONS AS TO DAMAGE.— Where the petition alleges that the crop was in fine condition during certain months; that during that period it was destroyed through the negligence of defendant; that it would have made a specified amount per acre, and was worth a specified sum per acre, it was held that these allegations as to damage, according to their usual significance, showed what the crop would produce at maturity, and not what the immatured crop was worth at the time it was destroyed, and a demurrer thereto was properly sustained.

3. SAME — EVIDENCE.— No fact should be alleged which need not be proved.

4. PARTIES — JOINDER.— In a suit brought against a railway company by a tenant for damage to growing crops, it is not necessary for the landlord to be joined in the suit.

5. SAME — TENANT IN COMMON.— Under the Revised Statutes (art. 3107), the landlord's lien and the remedy by distress warrant prescribed by statute are inconsistent with the relationship of tenant in common, and none of the consequences resulting from such relationship can be inferred in such a case.

6. DAMAGES — RECOVERY.— In a suit brought by a tenant against a railway company for damage to a growing crop, the tenant is entitled to recover all the damages incurred, and not a share proportionate to his ultimate interest in the crop.

APPEAL from Marion. Tried below before the Hon. B. F. Estes.

Bayliss sued the Texas & Pacific Railway Company for the value of three hundred and thirty bushels of corn alleged to have been destroyed by the negligence of appellant in failing to keep a sufficient cattle-guard where its road entered his field. The petition of Bayliss alleged that he had rented from one Farrell twenty-two acres of land; that appellant's road was operated over the land, which was inclosed by a lawful fence; that he had corn planted therein; that in the months of May, June, July and August the corn was up and in fine condition; that during these months appellant permitted the cattle-guards at the points of entrance to and exit from the field to become worthless and insufficient to prevent the depredations of cattle and hogs; that stock entered upon the corn growing on the field and totally destroyed the entire crop; that the twenty-two acres would have made an average of fifteen bushels of corn to the acre, and the same was reasonably worth the sum of seventy-five cents per bushel.

Defendants pleaded a general demurrer, which was overruled, and a verdict in favor of the appellee for $200 was rendered.

*James Turner*, for appellant, on non-joinder of parties, cited: May v. Slade, 24 Tex., 205; Hill v. Gibbs, 5 Hill, 59; 35 Pa. St., 332; 12 Pick. (Mass.), 124; 3 John. Ch. (N. Y.), 216; 11 Mo., 107 Freeman on Co-tenancy, 331, 347. On measure of damages: Sabine & East Texas R'y Co. v. Joachimi, 58 Tex., 456.

*C. A. Culberson*, for appellee, cited: Hardeman *v.* State, 3 Tex. Law Rev., 263; Sowers *v.* Peterson, 59 Tex., 216; Contreras *v.* Haynes, 61 Tex., 103, and other authorities.

WILLIE, CHIEF JUSTICE.— Only two of the points involved in the numerous assignments of error filed in this cause demand our attention, viz.:

1. Does the petition claim the proper and legal measure of damages to which the plaintiff is entitled under its allegations? 2. Was the suit properly brought by the appellant alone, or should his landlord, Farrell, have been joined as co-plaintiff?

It is now firmly settled by the decisions of this court that the proper measure of damages in a case like the present, when the crop has been entirely destroyed, is the value of the crop at the time of its destruction. This is conceded by both parties. S. & E. T. R'y Co. *v.* Joachimi, 58 Tex., 456; T. & St. L. R'y Co. *v.* Young, 60 id., 201.

The allegations of the petition pertinent to this question are that the corn was up and in fine condition in the months of May, June, July and August, 1882; that, during these months, the crop was destroyed; that it would have made, on an average, fifteen bushels of corn to the acre, and the same was worth seventy-five cents per bushel; and that the damage resulting from defendant's neglect was $247.50.

The appellee says that, taking the expression " would have made fifteen bushels of corn per acre " in connection with the previous allegation as to the time when the crop was growing and destroyed, viz., in May, June, July and August, it should be construed to mean that there was an average of fifteen bushels of corn growing in the appellee's field at that time.

In aid of this construction he calls in the subsequent statement that the corn *was* worth seventy-five cents per bushel, and says that this shows that the idea intended to be conveyed was that the crop was worth the sum claimed during the months mentioned.

The appellant, on the other hand, contends that the natural and proper construction of the language shows that the claim is for what the crop would have produced at maturity, which has been frequently held not to be a proper measure of damages in such a case. To arrive at the meaning of the language of the petition we must give to the words employed their ordinary and usual signification when applied to the subject-matter in connection with which they are used.

It is to be presumed that the pleader intended to use them in this

sense, and supposed that his adversary would construe them in the same manner.

The pleader is required to inform the opposite party of the nature and extent of his demand or defense, so that it may be known what evidence should be produced to meet and combat it.

This rule will not admit of any strained or forced construction, which, by warping language from its usual meaning, and deducing one fact from the existence of another, and resorting to argument and inference, may give to the pleading an interpretation which ordinarily it would not receive. Thompson v. Munger, 15 Tex., 523; Malone v. Craig, 22 Tex., 609; Yale v. Ward, 30 Tex., 17.

The adverse party is not expected to place every construction upon the language used that it will possibly admit of, when taken in every relation it bears to other portions of the pleading, and to prepare his proof to meet all the different aspects of the case thus presented.

He must give to the language its ordinary construction, and none other will be presumed to come within its reasonable intendment even upon general demurrer. See rule XVII, 47 Tex., 619.

What is the ordinary meaning attached to the expression that "a field would have made upon an average fifteen bushels of corn to the acre?" Would any planter or other person hearing the expression used place any construction upon it other than that it would have yielded that much at harvest time?

Suppose that one person were detailing to another the precise circumstances which are set forth in this petition, and should say that in May, June, July and August, 1882, he had twenty-two acres of corn growing finely, but hogs broke into it through the railroad cattle-guards and destroyed his entire crop; that he would have made on an average fifteen bushels to every acre of the field, and that these were worth seventy-five cents per bushel. What would the party addressed have taken him to mean? Would he have found any difficulty in construing the language? Would he by any possibility have supposed that the narrator meant that there was an average of fifteen bushels of corn growing on the land in the months of May, June, July and August, and that he could have sold the corn thus growing on the stalks during these months at seventy-five cents per bushel? Most certainly not; but he would have given the language the only reasonable meaning that could be attached to it, viz.: that if his crop had not been destroyed it would have made, or matured into, fifteen bushels per acre, worth seventy-five cents per bushel.

The allegation as to the measure of damages must be taken in connection with the averments as to the causes which brought these about. The cattle entering over the guards or steps destroyed the crops, and but for this destruction the field would have made the number of bushels alleged, is the plain and proper reading of the petition, and any other construction is not within the reasonable intendment of the words used. The meaning of the word *make*, when used in relation to a crop, is as well understood as any other word in our language. It means "produce at maturity."

A growing crop is not *made* but in the process of being made; and what it *will make*, or *would have made*, but for having been destroyed is a very different thing from the amount of unformed or half-formed or unmade ears that may be found upon it in its immature condition.

The additional expression that the corn *was* worth seventy-five cents per bushel will not aid the construction placed upon the petition by appellee's counsel. If it is referred to the date when the crop would have made or matured, it is consistent, easily understood and appropriate. If referred to the time when it was growing in the field, it not only creates an ambiguity, but renders the petition defective, in that it alleges what the amount of crop would have been at one time, and its value at another, and thus furnishes no data whatever by which to estimate the damages. To adopt the construction of appellee, we should have to hold the expression "would have made" to be equivalent to the words "had growing upon it," which is quite a different thing, as any one accustomed to cultivating crops would testify. And we should have to resort to subtle arguments and remote inferences from facts vaguely alleged in the petition to sustain this perversion of language from its ordinary sense.

In R. R. Co. *v.* Joachimi, 58 Tex., 459, we held that the plaintiff should not have been allowed to prove what would have been produced by his land that was planted in vegetables, which were growing on it at the time they were destroyed by a flood. If not a thing to be proved, it was not one to be alleged. The word *make* is hardly so comprehensive in signification as the word "produce," being ordinarily limited to production at maturity.

We think the petition defective in claiming an improper measure of damages, and the demurrer to it should have been sustained.

The remaining question presents no difficulty. It appears from the evidence that Farrell rented the land on which the crop was planted to Bayliss, the latter agreeing to pay Farrell, as rent there-

for, one-third of the corn raised on the place. By this contract, when the crop was matured and being gathered, Farrell was to get one-third, to be hauled to his crib, and plaintiff two-thirds, to be hauled to his crib. It has been sometimes held that such contracts create the relationship of tenants in common between the parties. Whether this is a correct rule, or supported by the weight of authority, it is not necessary for us to decide, as we consider the question settled by our Revised Statutes.

They treat the relation created by such a contract as that of landlord and tenant, and place it upon the same footing as that of one in which a moneyed consideration is paid for the use of the land. R. S., art. 3107.

The landlord has a lien upon the crop to secure the rent, and may enforce it by distress warrant in manner provided by the statute.

Such lien and such a remedy are inconsistent with the relationship of tenancy in common, and none of the consequences resulting from that relationship can be enforced in such a case. Bayliss, as tenant, was invested with all the rights of his landlord, so far as the estate conveyed to him by lease extended, was in possession and owner of it for the time, and might sue for any injury to it that affected his estate. Wood on L. & T., 927.

In such suit he was entitled to recover the entire damage caused by the injury, and not a share proportionate to his interest in the crop.

Upon another trial of the cause it will be proper for the court to charge the jury accordingly, and not confine the recovery of the plaintiff, should he obtain a verdict, to an interest in the damages proved proportionate to his interest in the crop of corn as provided in the contract between himself and his landlord.

For the error of the court in overruling the general demurrer to the petition, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 5, 1884.]