RAYWOOD RICE CANAL AND MILLING COMPANY v. LANGFORD BROS. ET AL.

Decided May 6, 1903.

**1.—Lease—Breach of Agreement—Measure of Damages.**

Defendant leased to plaintiffs, for one-half the crop to be grown thereon, certain land, to be planted in rice, and agreed to supply by irrigation the water necessary therefor. It was stipulated in the lease that in no case should the lessor be liable for any damages that should exceed one-fifth the entire crop grown on the land. Owing to defendant's failure to supply water there was an entire failure of the crop for one year. Held, that such stipulation did not furnish the measure of damages in the case.

**2.—Damages to Growing Crops—Measure of.**

The measure of damages for injury to a growing crop is the difference between what the crop damaged made and what it would have probably made but for the injury, less the cost of raising, harvesting and marketing the crop.

**3.—Damages—Assignment of Claim for.**

A claim for unliquidated damages growing out of a breach of an agreement in a lease to supply water for making a crop is assignable, and where the party liable for the damages settles with the assignor after notice of the assignment, the assignee's right to recover on the claim is not defeated.

Appeal from the District Court of Liberty. Tried below before Hon. L. B. Hightower.

*C. F. Stephens,* for appellant.

*Smith, Crawford & Sonfield,* for appellees.

32 Civil—26.

GILL, ASSOCIATE JUSTICE.—This suit was brought by H. A. and J. O. Langford against the appellant, a corporation organized under the laws of Texas.

The plaintiffs alleged in substance that defendant, being a canal and irrigation company, contracted with plaintiffs to irrigate for them 450 acres of land in the year 1900 and 475 acres during the year 1901, which was to be planted in rice by plaintiffs. The land belonged to defendant, and the latter was to receive one-half of the crop as remuneration for the use of the land and supply of water. It is averred that defendant failed to furnish the water as promised, by reason of which the crop for 1900 was greatly injured and the crop for 1901 altogether destroyed. It is further averred that of the crop of 1900 the defendant unlawfully converted 430 sacks of rice, and that by its breach of contract to thresh the crop for that year it was further damaged by bad weather. The aggregate damages asked amount to $23,593.

The defendants, after general demurrer and general denial, pleaded a clause in the contract which limited the damages recoverable to the value of one-fifth of the crop raised in any one year during the continuation of the lease. Further, that it was not liable because the failure to supply water was due to an accident to the pumping machinery, and that the contract in terms exempted it from liability if the failure to furnish water was due to such a cause. Accord and satisfaction was also pleaded, and an offset in the sum of $2138 was urged for advances alleged to have been made by the company to plaintiffs to enable them to make the crops. As to the allegation of damage for failure to thresh, it was averred in defense that the plaintiffs failed to stack the grain, and for that reason it was injured.

Smith, Crawford & Sonfield, a firm of attorneys, intervened, setting up an assignment of one-third of the cause of action by J. O. Langford to them in consideration of their legal services rendered, and that he had compromised with the company, the latter having notice of the assignment, and he having taken a nonsuit, they prayed to be permitted to recover to the extent of their interest in the cause of action. Over the objection of the company they were permitted to prosecute their claim.

A trial by jury resulted in a judgment in favor of H. A. Langford for $1436.37, and in favor of the interveners for $159.55. From this judgment defendants have appealed, and undertake to present many assignments of error.

The record sustains the following fact conclusions: The defendant, a Texas irrigation corporation, rented to the plaintiffs, Langford Bros., 450 acres of land for the year 1900, to be planted in rice, and undertook to supply sufficient water to properly irrigate the land during that year. The plaintiffs planted the land in rice as agreed, but the defendant furnished no water. Notwithstanding this the plaintiffs made, by reason of the rainfall, 430 sacks of rice that year, which were actually threshed and saved. Much more would have been made than were made had the

defendant furnished water as promised. For that year also defendant agreed for a valuable consideration to thresh the plaintiffs' rice crop, but, through negligence, failed to do so until, without fault on plaintiffs' part, the crop which was made was seriously damaged.

For the year 1901 defendant leased to plaintiffs 475 acres of land (other than that leased for 1900) upon the same terms and conditions as for the first year. Plaintiffs prepared their land and planted their crop, but defendant furnished no water, whereby (the rains being insufficient) the rice perished and no crop was made. If the water had been furnished each year in proper quantities the crops would have averaged about sixteen sacks to the acre at harvest time, subject to a possible diminution thereafter on account of damage from rains before threshing. Defendant appropriated to its own use the entire 430 sacks for the year 1900, notwithstanding the fact that under the terms of the lease each was equally interested in the crop produced. The cost of raising and harvesting and marketing was shown. The amount of the verdict is sustained by the evidence.

Appellant assigns as error the action of the trial court in submitting to the jury the question whether, in the light of the facts, the contract supplied an intelligible measure of damages for failure to furnish water. The clause by which the parties undertook to prescribe by contract the measure of damages is as follows: "But in no case shall the first party be liable for any damages that shall exceed one-fifth of the entire crop grown during any one year by said second party on said land during the continuance of the lease." But one crop was raised by plaintiffs on the 450 acres leased for 1900. The effort to make a crop in 1901 was upon different land. This being true, it is manifest that the rule could not be construed as meaning the crop of any previous year, for there had been none. It could not be held to mean the crop for the year the breach was claimed, for in 1901 no crop was raised. This last construction would mean that the parties had stipulated that the greater the damage the less the recovery should be. If the language could be construed to mean one-fifth of an average crop grown on like land under like conditions, it would doubtless furnish a fair and just measure of damages, but the parties have not so bound themselves. The language is incapable of such construction. These things being true, it is manifest that the language quoted does not furnish a measure of damages for this case. The contract stands as if the parties had not undertaken to do so. The complaint, then, that the court erred in submitting to the jury the construction of this part of the contract can not be allowed, because the jury rightly refused to be controlled by it, and determined the cause under the general rule for the measure of damages furnished by the court. This can be inferred with certainty from the nature of the verdict. But if they did not do this, appellant can not complain, because it insists that the written measure ought to have controlled. In either event, the error, if any, was harmless.

Under the second assignment appellant complains of the refusal of

the trial court to sustain the exception to the petition, to the effect that the damages claimed were too speculative and remote. The plaintiff, after averring the execution of the contract to irrigate, etc., alleged the planting of the crop, its promising growth, the necessity for irrigation, failure to furnish water, damage to the first crop and destruction of the second, alleges the amount of rice the crop would have made had it been properly watered; and its value, and avers the reasonable cost of cultivating and marketing.

It is generally held that probable future profits are not recoverable as damages, either for breach of contract or for tort. The recovery has been refused, not because they were profits, but because of the difficulty, if not impossibility, of establishing them with any sort of certainty; so, in cases where it appears that the court may safely resort to profits as a measure of damage because in that case they are susceptible of reasonably certain proof, the general rule above stated has not been applied. However, this general rule requiring certainty of proof and forbidding an entry into the field of uncertainty and speculation, has been applied to suits brought to recover damage for injury to growing crops, and the right to recover what would have been made or to inquire what the crop would have produced, if uninjured, has been generally denied. The measure of damages in such a case is stated to be the difference between the value of the crop just before and just after the damage. In speaking of the value of the growing crop at the time of the injury of course was meant its value for the purpose of continuing its cultivation to maturity, for in most, if not all cases, it would be valueless for any other purpose. In ascertaining its value proof must be heard either as to the market price or its intrinsic worth, and it follows that any witness who undertakes to speak intelligently as to its value must base his figures upon a sound estimate of what the crop would probably produce if well cultivated and uninjured, and to deduct from that result the cost of cultivation and marketing. In the application by the courts of this rule it is plain the courts permitted the witnesses who estimated and testified to the present crop value to resort to the speculative and uncertain matters which, under the general rule, the court had refused to consider or allow, and what had been condemned as unsafe and speculative was thus indirectly relied on and used as the basis for a judgment.

In Railway Co. v. Pape, 73 Texas, 503, Justice Gaines, in a case involving damage to a growing crop, after stating the rule in substance as above and remarking upon the fact that usually there would be no market for such a thing, uses the following language: "It follows that in such a case some other method must be resorted to for the purposes of ascertaining its value. It seems to us that, as a general rule, the most satisfactory means of arriving at the value of growing crops is to prove its probable yield under proper cultivation, the value of such yield, when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transmission to market.

The difference between the value of the probable crop in the market and the expense of maturing, preparing and placing it there will in most cases give the value of the growing crop with as much certainty as can be attained by any other method."

It is apparent from the language quoted that our Supreme Court has taken into consideration and adopted the methods which the ordinary witness as to value will naturally and logically employ in speaking to the value of a growing crop, and thus the court is indirectly influenced and controlled in such an inquiry by the estimated yield. The following Texas cases have followed the rule as stated: Railway Co. v. Borsky, 2 Texas Civ. App., 545; Railway Co. v. Simonton, 2 Texas Civ. App., 558; Railway Co. v. McGowan, 73 Texas, 355; Railway Co. v. Pape, 73 Texas, 501; Railway Co. v. Joachimi, 58 Texas, 456.

A distinction has been made by some authorities between the measure of damages in cases of this nature, sounding in tort, and those arising out of breach of contract, but Long, in his work on Irrigation, does not recognize the distinction (Long on Irrigation, p. 273), but lays down practically the same rule as Pape's case and the other authorities cited above. Irrigation Co. v. Richards, 22 Colo., 450, and Herring v. Armwood (N. C.), 57 Law. Rep. Ann., 958, are in point. Each of them involves a breach of contract. The distinction is repudiated in Jones v. George, 61 Texas, 354. The case last cited is also directly in point on the measure of damages, though the rule that the speculative value of the possible crop may not be recovered is also broadly stated.

It would serve no useful end to discuss and undertake to apply or distinguish the many cases cited by appellant. We believe the rule as stated is established in this State by Supreme Court decisions. The case of Lutcher v. Stoddard, 56 S. W. Rep., 608, states the rule to be as applied to breach of contracts, the recovery only, the value of labor and expenditure up to the breach, but, as has been shown above, we believe we have authority from the Supreme Court for the rule as announced by us. We are of opinion a contract of the nature of this sued on invites the application of the rule, because both the purpose and effect of irrigation is to eliminate many of the dangers and uncertainties which usually attend the raising of agricultural products, so that one engaged in the business can more certainly foresee what the result of his year's work may be.

The charge given by the court upon this point was as follows: "If by a failure to supply water the defendant injured plaintiffs' crop, * * * then the proper rule by which you will determine plaintiffs' damage is the difference between what the crop damaged made and what it would have probably made if it had been properly watered, and from that difference, if any you find, you then deduct the cost of raising, harvesting and marketing the same."

As has already been shown, this is in legal and practical effect the same as the rule announced in Pape's case. It is but another way of

saying "find for plaintiffs the value of the crops at the date of the breach."

Appellants complain of the intervention of the attorneys of J. O. Langford. Prior to the institution of the suit they had taken an assignment of a one-third interest in his cause of action. The company compromised with notice of the assignment. Such a cause of action is assignable. Hence the appellant, knowing their rights, should have respected them. The court did not err in the respect complained of. Railway Co. v. Ginther, 30 Texas Civ. App., 161, 6 Texas Ct. Rep., 732.

None of the other assignments require extended notice. Because the verdict is sustained by the evidence, and we have found no reversible error in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In the motion for rehearing our attention is particularly called, among other things, to the eighteenth assignment of error, in which appellant undertakes to complain of a portion of the court's charge on the ground that it is "inconsistent with the evidence." We did not consider the assignment, for the reason that it was not followed by such a statement as the rules require. For the reason stated we still think it should be ignored. The statement that it was not considered was inadvertently omitted from the main opinion.

We are requested to find certain additional facts, but upon consideration have concluded the facts found by us embody in a general way those requested to be found, and are therefore ample for the preservation of appellant's rights in the Supreme Court.

The motion for rehearing presents no additional reason for reversal and nothing which ought to induce us to change our views as originally expressed. It is therefore overruled.

*Overruled.*

Writ of error refused.