FT. WORTH & D. C. RY. CO. v. SPEER.
(No. 9037.)

(Court of Civil Appeals of Texas. Ft. Worth.
March 29, 1919.)

1. LIMITATION OF ACTIONS ⬤⟿55(7)—ACTION
AGAINST RAILROAD COMPANY FOR FLOOD
DAMAGE—OBSTRUCTION BY BRIDGE.

Where the defendant railroad company's
construction of a bridge as built was not unlawful and plaintiff's rights were not invaded by
its building, but the bridge was an impediment
to the stream, causing or increasing an overflow of plaintiff's land during heavy rains, the
statute limiting actions therefor ran from the
date of the flood.

2. LIMITATION OF ACTIONS ⬤⟿55(7)—INJURIES FROM NUISANCE DEPENDING UPON ACCIDENTS AND CONTINGENCIES — SUCCESSIVE
ACTIONS — LIMITATION RUNNING FROM INJURY.

Where a nuisance is permanent, and continuing resulting damages should all be litigated in
one suit, but when not permanent and dependent upon accidents or contingencies successive
actions may be brought for injury as it occurs,
and an action for such injury would not be barred by the statute of limitations, unless the full
period of the statute had run against the special injury before suit was brought.

3. WATERS AND WATER COURSES ⬤⟿178(2)—
FLOODING OF LAND — NATURAL AND INCREASED FLOODING—INCREASE OF LOSS.

Where it is shown that plaintiff's land
would have been flooded by natural causes, but
that the defendant's negligent construction of
a bridge has increased the loss, the measure of
damages is the increase of loss.

4. DAMAGES ⬤⟿108 — OVERFLOW OF LAND —
DIFFERENCE BETWEEN VALUE IMMEDIATELY
BEFORE AND IMMEDIATELY AFTER.

The measure of damages to land caused by
overflow is the difference in the value of the
land immediately before and immediately after
such overflow.

5. DAMAGES ⬤⟿108 — OVERFLOW OF LAND —
PREVENTION OF PLANTING AND CULTIVATION—REASONABLE RENTAL VALUE.

If the overflow of land be caused by defendants' wrongful act and plaintiff by reason
thereof is unable to plant and cultivate his crop
during the crop season, he is entitled only to
the reasonable rental value of the land for said
term, and not the probable value of crops, less
cultivation cost.

6. DAMAGES ⬤⟿112—DESTRUCTION OF PLANTED, GROWING, OR MATURED CROPS — REASONABLE VALUE AT TIME AND PLACE OF DESTRUCTION.

Where crops have been planted and are
growing or have matured and are yet on the
land, plaintiff is entitled to recover for their
destruction from overflow caused by defendant's wrongful act the reasonable value of such
crops at the time and place of destruction.

7. WATERS AND WATER COURSES ⬤⟿179(4)—
NEGLIGENT CONSTRUCTION OF BRIDGES —
DAMAGES FOR OVERFLOW—EVIDENCE—SUFFICIENCY.

In an action for damages for the increase
of an overflow by negligent construction of a
railroad bridge, testimony showing overflow
more extensive than those before construction, but not showing extent of increase or the
amount of damage caused by such increase, is
insufficient.

8. TRIAL ⬤⟿207 — NEGLIGENT CONSTRUCTION
OF BRIDGES — DAMAGES FOR OVERFLOW —
FAILURE TO GIVE INSTRUCTION AS TO EVIDENCE.

In an action for flooding of lands by negligent construction of a railroad bridge, where testimony that lower bridges were similarly constructed was admitted over defendant's objection, it was error to refuse to charge that
jury should not award any damages as having
resulted from the condition of bridges below
plaintiff's land.

9. WATERS AND WATER COURSES ⬤⟿179(4) —
NEGLIGENT CONSTRUCTION OF BRIDGE —
DAMAGES FROM OVERFLOW — INCREASED
OVERFLOW—EVIDENCE—INSUFFICIENCY.

In an action against a railroad company for
damages from overflow of land and crops resulting from negligent construction of a bridge,
defendant was not liable for such damage as
would have resulted from overflow had no
bridge been constructed, and where the evidence
was insufficient for the jury to determine what
portion of the damage was caused by the increased overflow due to the bridge, they had
no basis for determination of the amount of
plaintiff's recovery.

10. TRIAL ⬤⟿350(6)—SPECIAL ISSUE — MATERIALITY—FLOODING LAND.

In an action against a railroad company for
damages from increased overflow caused by the
negligent construction of a bridge, the refusal
to submit the special issue, "Were the overflows
and damage complained of by plaintiff caused
by heavy rains, such as would overflow and inundate plaintiff's said lands irrespective of the
presence and condition of defendant's railroad
track and bridge in question?" held error, even
though the matter was covered in a general
way by the court's charge.

11. WATERS AND WATER COURSES ⬤⟿179(5)—
RAILROADS — NEGLIGENT CONSTRUCTION OF
BRIDGE—OVERFLOW—CONTRIBUTORY NEGLIGENCE — EVIDENCE CALLING FOR INSTRUCTION.

In an action against a railroad company for
damages from flooding of lands resulting from
defendant's negligent construction of a bridge,
evidence held not sufficient to require an instruction on plaintiff's contributory negligence
in failing to remove obstructions consisting of
trees and drift from the channel of a creek.

12. TRIAL ⬤⟿352(4) — INSTRUCTIONS—PLEADING—ISSUES.

Issues of railroad's liability for violation of
Rev. St. art. 6495, by failure to provide neces-

sary culverts and sluices, *held* not to conform with petition, which did not follow wording of statute.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by Oran Speer against the Ft. Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, and McMurray & Gettys, of Decatur, for appellant.

Ocie Speer, of Ft. Worth, and J. V. Patterson, of Decatur, for appellee.

BUCK, J. This is a suit by plaintiff, Oran Speer, against the Ft. Worth & Denver City Railway Company for damages to his land and the loss of crops thereon, alleged to have been caused by the construction and maintenance of a bridge across Sandy creek, which runs through and across plaintiff's land. The petition alleged in part as follows:

"Plaintiff would further show that in constructing its said track and line of railroad defendant built the same across said water course and creek and constructed thereon a railroad bridge of heavy timber and materials at such a height and in such a manner as seriously and materially to impede and interfere with the flow of water down said stream and to divert the water therefrom, and to cause it to spread out over and to injure said land in the manner hereinafter shown; that in the construction of said bridge and structure defendant did not, as it was required by law to do, leave sufficient passway for the water to allow the passage thereof down said stream, as it was accustomed to do; that the heavy and numerous timbers placed by defendant in the channel of said stream not only partly and largely closed the channel thereof, but that they caused to gather at said point heavy drifts from the floating waters on said stream, thereby choking and closing the channel of said creek and further causing the water to be delivered as aforesaid."

It was further alleged that by reason of the general lay of the land and the course of the stream, said structure caused the water to overflow plaintiff's land on the south and west side of the creek, said land being known and described as the Hatchett tract, consisting of 55 acres, and also across the land on the east side of the creek, being 105 acres, described as the Riley tract, cutting away the banks and washing the land and making it less productive, and also destroying plaintiff's crops raised thereon. Plaintiff alleged that said lands were good agricultural lands, and, though the bridge had been built several years, that until the fall or winter of 1914 said land did not overflow so badly. But that the increased damage to the land and crops was caused by the

filling up of the bed of the stream and the cutting of the banks. Plaintiff further alleged his land was mostly used for a Johnson grass meadow, and that during the year 1915–1916 he lost the entire crop of hay, by reason of the overflow.

Defendant answered by way of general demurrer, special exceptions, plea of limitation of 2 years, by general denial, and specially pleaded that long before defendant's line of railroad and bridge were constructed plaintiff's land had been subjected to overflows, causing the water to flow over plaintiff's land and to damage the soil and the crops, and that if plaintiff had suffered any loss by reason of overflows it was only such damage as naturally resulted from the lay of the land and the character of the stream, and that said losses did not arise by reason of any construction made by defendant.

The cause was tried before a jury on special issues, the jury finding:

(1) That the defendant did not, prior to November 2, 1914 (2 years anterior to filing of suit), and up to the time when its bridge across Sandy creek was removed, maintain in said bridge the necessary culverts and sluices as the natural lay of the land required for the drainage thereof.

(2) That plaintiff's land had been caused to overflow with water from Sandy creek by reason of defendant's failure to maintain in its bridge the necessary culverts and sluices.

(3) That plaintiff had lost a portion of his crop since November 2, 1914, by reason of said failure, and that $1,200 would compensate him therefor.

(4) That plaintiff's lands had been injured by reason of defendant's said failure, and that $600 was the measure of such loss.

Upon this verdict the court entered a judgment for plaintiff in the sum of $1,800, from which defendant has appealed.

[1, 2] Appellant's first and second assignments of error are directed to the failure of the court to give specially tendered peremptory instructions for defendant. The first, on the ground that the evidence showed conclusively and without contradiction that the rains and floods causing the overflows were such as would have caused overflows and damage irrespective of the presence or condition of the railroad and bridge, just as such had occurred before the railroad and bridge were constructed. The second, on the ground that since the evidence showed that the bridge and railroad had been constructed, and were in the condition alleged at the time of the alleged damage, for many years prior to November 2, 1914, two years before filing of the suit, plaintiff's cause of action was barred by the statute of 2 years' limitation. We will discuss the second assignment first. The evidence tended to show that the bridge constructed by appellant was built upon large timbers or pilings, some 36 or 40

in number, placed in the bed of the stream, and that these pilings more or less interfered with the natural flow of the water down the channel of the stream, and caused to collect ,on the upper side of such obstruction trees and other drift. The result was that, the current of the stream being impeded, the bed of the stream more or less filled up with silt and sand. At times of heavy rains there was an increased tendency of the water to overflow and run across plaintiff's lands, The width of the stream ranged from 40 to 50 feet, and from the fact that later the railroad company did remove the obstruction, as well as from the knowledge possessed by the court in common with men of general intelligence and experience, it would seem that the pilings, as placed, were not of such a permanent nature as that they might not be removed at the outlay of a reasonable cost, and the injurious effect therefrom abated and remedied. In M., K. & T. Ry. Co. v. Anderson, 194 S. W. 662, in discussing the question of what should be regarded as a permanent injury, this court held that in case of damages from the diversion of the natural flow of the water by an obstruction built by a railroad, the injury is to be regarded as permanent, where the cost of remedying it would be so great as to justify the railroad in condemning the property and taking it under the power of condemnation, but if the injury can be remedied at a reasonable expense, it may be regarded as temporary, and the question whether the injury is permanent or temporary may be for the jury. In Houston Waterworks v. Kennedy, 70 Tex. 233, 8 S. W. 36, our Supreme Court laid down two rules, amply sustained by authority, which should be kept in mind in the determination of the question of limitation, involved in cases of this character:

(1) "When an act is in itself lawful as to the person who bases thereon an action for injuries subsequently accruing from and consequent upon the act, the cause of action does not accrue until the injury is sustained."

(2) "If an act is done which in itself is an invasion of the right of another, which being done, injury is the natural sequence, then limitation will run against the right to recover damages from the time the unlawful act was committed, though the injury may not have been discovered until within a period before suit less than would be sufficient to complete the bar of the statute."

In the instant case it does not appear that the construction of the bridge as built was unlawful, or that at the time of the building there was any invasion of the rights of the plaintiff or any injury to his land. It was only upon the occasion of heavy rains and consequent increased flow of water down the stream that the impediment created such an obstruction as caused the water to overflow plaintiff's lands and injure them and the crops thereon. In Railway Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, our Supreme Court laid down the rule that where a nuisance is permanent and continuing the damages resulting from it should all be litigated in one suit, but when it is not permanent, but depends upon accidents and contingencies, so that it is of a transient character, successive actions may be brought for injury as it occurs; and an action for such injury would not be barred by the statute of limitations unless the full period of the statute had run against the special injury before the suit. See, also, Railway Co. v. Brown, 38 Tex. Civ. App. 610, 86 S. W. 659; Railway Co. v. Helsley, 62 Tex. 593; Clark v. Dyer, 81 Tex. 339, 16 S. W. 1061.

We conclude that the peremptory instruction for defendant was not called for by reason of limitation. The damage for which plaintiff sought recovery was the injury to his lands and crops within the 2 years' period.

[3-6] But the first assignment presents a more serious question. If the plaintiff was entitled to recover for damage to the soil as well as damage to and loss of his crops, the measure of his damage was the difference in the loss he did sustain and the loss he would have sustained by reason of overflows which would have occurred in the absence of the obstruction placed by the defendant. Where it is shown that land would have been flooded by natural causes, but the defendant's act has increased the loss, the measure of damages is the increase of loss. 3 Sedgwick on Damages (8th Ed.) § 942, pp. 57, 58. The measure of damages to land caused by overflow is also stated to be the difference in the value of the land immediately before and immediately after such overflow. Owens v. Railway Co., 67 Tex. 679, 4 S. W. 593; Railway Co. v. Green, 44 Tex. Civ. App. 247, 99 S. W. 573, writ denied. If the overflow be caused by defendant's wrongful act, and plaintiff by reason thereof is unable to plant and cultivate his crop on the land during the crop season, he is entitled only to the reasonable rental value of the land for said term, and not the probable value of the crops, less cost of cultivation. 3 Sedgwick on Damages, p. 58. But where crops have been planted and are in the process of growth, or have matured and are yet on the land, the plaintiff is entitled to recover the reasonable value of such crops at the time and place of their destruction. The method of arriving at the value of growing crops is discussed in the cases of Milling Co. v. Langford Bros., 32 Tex. Civ. App. 401, 74 S. W. 926, writ denied; Railway Co. v. Bayliss, 62 Tex. 570; Railway Co. v. Hedrick (Sup.) 7 S. W. 353.

[7] Both appellant and appellee set out in full the testimony of the plaintiff, and

after a careful examination of such testimony we have come to the conclusion that it fails to disclose evidence upon which a jury could properly base a verdict. The testimony shows that the plaintiff had owned the two tracts of land alleged to have been overflowed and injured for some 10 years prior to the trial, and that he had been acquainted with these lands and other tracts adjacent to Sandy creek for some 25 years, a period antedating the construction of the railroad line and the bridge in question; that prior to the erection of the bridge and placing of the piling thereunder the lands of the plaintiff were subject to overflow on the occasion of heavy or unusual rains, and that the lands and the crops thereon were damaged more or less. Plaintiff testified that in his opinion the damage caused to the lands and the crops by overflow were more extensive subsequent to the construction of the bridge than before, and that the overflow covered a larger area, but he failed to show to what extent the overflows were greater or the damage increased. It was incumbent upon him to do this in order to sustain a recovery. It would be impracticable, within the reasonable compass of this opinion, to set out his testimony in detail, as was done in the briefs filed herein, but after a careful examination of plaintiff's testimony and the testimony of other witnesses upon the question of the extent of the damages arising by reason of the increased flooding of the land due to the nature and character of the bridge in question, we feel constrained to hold that the testimony fails to give any certain or reliable basis for the recovery sought and the verdict rendered, and left the jury to wander through the domain of surmise and speculation in order to reach the verdict rendered.

Plaintiff did testify that during the year 1915 he had from 100 to 125 acres in Johnson grass meadow on the two places, and that in his opinion the crop would have averaged from one-half to one ton to the acre a year. He did not remember the exact price of hay that year but thought it was worth from $6 to $8 per ton, at that time and place, and in 1916 it was worth probably from $7 to $9 per ton at baling season, and during 1916 he was not able to mow the land at all. That in his opinion the Riley tract was worth prior to the overflow in 1915 from $40 to $50 an acre, and that subsequent to the overflow said land was worth around $30 an acre. That from 15 to 16 acres of said tract was badly washed and was not as productive as before, and that all of said tract was washed more or less. But he failed to show what the increase of loss was by reason of the construction and maintenance of the bridge, and how much of said loss would have been sustained in the absence of the bridge. As we have concluded that this case must be reversed for other errors hereinafter noted, we will content ourselves by stating that upon another trial the extent of the increased damage, if any, should be affirmatively shown.

[8] In the third assignment complaint is made of the admission of certain testimony of witness J. C. Champion as to the construction of bridges across Sandy creek other than the one alleged in plaintiff's petition to be the cause of the injury to his land and crops. He testified that he owned land west and south of the Hatchett tract; that for some 12 or 15 years he had cultivated the portion south of the Hatchett tract and did not get as good crops in 1915 and 1916 therefrom as in previous years; that the overflows on the land in 1915 were "a little larger than they had been; covered more ground and did more damage." He further testified that the bed of the creek was practically level "away above" his place, and that his land was considerably deeper than at the time he bought it, and that the bed of the creek had filled up some three or four feet. He was then asked on redirect examination, "Are those bridges, the ones south of the county bridge, set on piling?" The defendant objected to the question and the answer thereto on the ground that the answer was incompetent, irrelevant and immaterial, and that there was no pleading to support such testimony. The court overruled the objection, and the witness answered, in effect, that the bridges south of the one in question were set on piling, and the construction of them was similar to the one on the Hatchett place.

Under the fourth assignment error is directed to the refusal of the court to give the jury a specially requested charge, in effect, that they should not award any damages as having resulted from the structure or condition of any of the defendant's bridges below the lands belonging to plaintiff. While we are not prepared to say that the admission of the testimony complained of in the third assignment constituted reversible error, yet we are of the opinion that upon the admission of said testimony the charge refused, of which complaint is made in the fourth assignment, should have been given. It is true that the cause was submitted upon special issues, and that issues Nos. 1, 2, and 3 limited the injury and consideration of the jury to the question of whether the defendant had maintained in its bridge across Sandy creek the necessary culverts and sluices as the natural lay of the land required for the drainage thereof, and the question of the injury to plaintiff's lands by reason of overflows produced by any failure of defendant in this respect, yet we think that inasmuch as the tendency of the testimony of the witness Champion was to show that the bridges below the bridge on plaintiff's land

were constructed in the same manner, and that largely the same results followed from overflows, the requested charge should have been given.

[9] In the fifth assignment complaint is made of the refusal of the court to give the defendant's requested charge as follows:

"If you believe from the evidence that the rains, or any of them that fell during the period complained of by plaintiff, were such that plaintiff's said lands or crops, or any part of same, would have been thereby inundated and damaged irrespective of the presence or condition of the bridge in question, then you are instructed that even if you should believe further from the evidence that the presence or condition of the bridge in question held back or caused to be held back and diverted over plaintiff's said lands additional waters in sufficient amount to cause additional damage to plaintiff's said lands or crops in excess of the damage that would have resulted irrespective of the presence of said bridge; and if you find that the evidence before you does not show or enable you to determine therefrom what portion of the damage was proximately caused by the presence or condition of the bridge in question, you will not undertake to estimate and assess any damage based upon surmise or speculation in answer to special issues Nos. 5 and 6 in the court's charge, or either of said special issues."

If plaintiff's land would have been inundated in the absence of the bridge and his crops injured, as the evidence tends strongly to show, defendant would not have been liable for such damage as would have resulted had no bridge been constructed, and if the jury were not presented with evidence sufficient for them to determine therefrom what portion of the damage was caused by the increased overflow due to the construction of the bridge, they had no basis upon which they could determine the amount of recovery, if any, to which the plaintiff was entitled. The majority of the court, at least, consisting of Chief Justice CONNER and Justice DUNKLIN, are of the opinion that the refusal of this charge constituted reversible error. Railway Co. v. Vogt, 181 S. W. 841.

[10] The sixth assignment complains of the refusal to submit the following special issue:

"Were the overflows and damage complained of by plaintiff caused by heavy rains such as would overflow and inundate plaintiff's said lands irrespective of the presence and condition of defendant's railway track and bridge in question?"

The proposition under this assignment is, in effect, that the defendant was entitled to have submitted the special issue requested, it being an affirmative presentation of defendant's theory and defense, grouping the facts upon which it relied and calling for a finding thereon, even though the matter had been covered in a general way by the court's charge. We sustain this assignment. Railway Co. v. Foth, 101 Tex. 133, 100 S. W. 171, 105 S. W. 322; Yellow Pine O. Co. v. Noble, 101 Tex. 125, 105 S. W. 318; Traction Co. v. Adams, 107 Tex. 612, 183 S. W. 155; Railway Co v. Kiersey, 98 Tex. 590, 86 S. W. 744.

[11] The witness Dickson testified to facts which the appellant contends raised the issue of whether or not plaintiff should have, in the exercise of ordinary care, removed from the bed of the creek trees and other drift, which naturally impeded the flow of the water in its channel, and to provide barriers or brakes at the places where the waters cut through the banks of the creek. Defendant submitted an instruction, in effect, that it was the duty of the plaintiff to use such care as an ordinarily prudent person would use under similar circumstances to avoid injury to his property, and also submitted a special issue involving the question of plaintiff's contributory negligence in failing to remove drifts or provide barriers to hold back the water at the places where it cut through the banks of the creek onto his land. The court is of the opinion that the evidence, as set out in appellant's brief, is hardly sufficient to raise the issue of contributory negligence, though if such issue were raised by the evidence it would have been the duty of the court to give the charge requested and to have submitted the issue tendered. Railway Co. v. Becht, 21 S. W. 971; Railway Co. v. Simonton, 2 Tex. Civ. App. 558, 22 S. W. 285; Albers v. Railway Co., 36 Tex. Civ. App. 186, 81 S. W. 828; Railway Co. v. Hapgood, 184 S. W. 1075; Railway Co. v. Arey, 107 Tex. 366, 179 S. W. 860, L. R. A. 1916B, 1065.

[12] Other assignments are directed to the submission of the issue of whether or not defendant failed to provide culverts and sluices as the natural lay of the land required for the drainage thereof, and the submission of the issue of damages to the land or the crops by reason of such failure. It is urged by appellant that the pleadings failed to contain any allegation that defendant failed to provide the necessary culverts and sluices as required by article 6495 of the Revised Civil Statutes, upon the wording of which statute it appears the issues were framed. By reference to plaintiff's petition it appears that plaintiff intended to predicate his action upon the alleged violation upon the part of the defendant of this article, though he did not follow the wording of the statute nor allege in so many words that defendant had failed to provide necessary culverts and sluices. Moreover, it further appears that plaintiff did not directly, eo nomine, allege negligence on the part of defendant in the construction of the bridge, as it was built, and in the maintenance thereof, but that he meant to charge that the con-

struction and maintenance of the bridge as built was in violation of a statutory requirement, and hence negligence per se. We would suggest that upon another trial, if the pleadings of plaintiff be not changed in form, that the issues submitted be so framed as to conform more nearly to the allegations of the petition in this respect.

Other questions raised under subsequent assignments we believe to have been disposed of by what we have already said.

For the reasons given, the judgment of the trial court will be reversed, and the cause remanded.